IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>      Plaintiff,<br><br>vs.<br><br>JOHNNY RAY McATEE and<br>JODIE ELAINE McATEE,<br><br>      Defendants. | No. CR05-2005<br><br>**REPORT AND RECOMMENDATION** |

_____

       This matter comes before the court pursuant to motions to suppress evidence filed by Defendant Johnny Ray McAtee on May 9, 2005, (docket number 33) and by Defendant Jodie Elaine McAtee on May 9, 2005, (docket number 38). On May 9, 2005, Defendant Johnny Ray McAtee also filed a motion for severance of trial (docket number 32). These motions were referred to the undersigned United States Magistrate Judge for issuance of a report and recommendation. The court held an evidentiary hearing on these motions on June 1, 2005, at which defendant Johnny McAtee was present and represented by John Broz. Defendant Jodie McAtee was present and represented by Anne Laverty. The government was represented by Assistant United States Attorney Daniel Tvedt. It is recommended that the motions to suppress and the motion for severance be denied.

       The motions to suppress arise out of the arrest of Defendant Jodie McAtee in the evening of March 8, 2005, and the search of the McAtee residence in Delaware County, Iowa, in the early morning hours of March 9, 2005. Defendant Jodie McAtee contends that police refused to cease interrogation when she asked for a lawyer. She further contends that these illegally obtained statements were improperly used to secure a warrant for her residence. She claims that the government violated her right to have the Canadian

1

Consulate notified upon her arrest. She contends that the police violated the requirement that they wait an appropriate amount of time after they knock and announce their presence before forcibly executing the search warrant. Finally, she contends that the warrant was improperly executed during the nighttime.

Defendant Johnny McAtee also contends that police violated the knock and announce rule before executing the search warrant, that it was improperly executed in the nighttime, and that police violated Fed. R. Crim. P. 41 by failing to give the defendant a copy of the warrant initially upon its execution. Mr. McAtee also contends that the warrant was not supported by a finding of probable cause. The court makes the following findings of fact and conclusions of law.

## **FINDINGS OF FACT**

Linn County, Iowa, like most rural places in the Midwest, has a considerable methamphetamine problem. Deputy Sheriff Mark Strait of the Linn County Sheriff's Department noticed that a significant number of receipts for precursor chemicals were found at laboratory sites showing that these precursors had been purchased at Target Stores. The Target Stores are anxious to assist law enforcement in surveiling and identifying persons purchasing those items. Target Stores have sophisticated surveillance abilities which assist the efforts of police as well. Target employees at the Cedar Rapids store on Blairs Ferry Road have kept track of license plates of cars driven by people buying suspicious amounts of precursor items.

On March 8, 2005, law enforcement officers from the Iowa Division of Narcotics Enforcement (IDNE), the Linn County Sheriff's Department, and the Cedar Rapids Police Department set up surveillance inside Target's Blairs Ferry store and in its parking lot. At approximately 5:00 PM that day, the police observed Defendant Jodie McAtee and co-defendant Matthew Goesse purchasing pseudoephedrine at that store. The police followed McAtee and Goesse to determine whether they were purchasing pseudoephedrine from

2

other locations as well. Sure enough, these defendants then went to the other side of town, separately entered a Dollar General store and a K-Mart store, and purchased pseudoephedrine. When they came out of their respective stores, each of them went to the other store and again purchased pseudoephedrine.

Police then approached McAtee and Goesse in the parking lot of the store at which they were parked. After a five-minute discussion with them, they were handcuffed and later transported to the Linn County Sheriff's Department where they were charged with possession of precursor items with intent to manufacture methamphetamine. While they were at the parking lot, a police officer advised Jodie McAtee of her <u>Miranda</u> rights. She told the officer that she understood those rights and was willing to answer his questions.

Upon her arrest, the police had considerable difficulty determining Jodie McAtee's identify. She identified herself as Paulette McClung. She produced a Canadian driver's license in that name but with a different date of birth than the one she verbally gave to the police. The police were not convinced by her claim to be Paulette McClung. Because she had produced a Canadian driver's license, police contacted Agent Chris Cantrell of the Bureau of Immigrations and Customs Enforcement. Cantrell had participated in the deportation or removal hearing related to Jodie McAtee in September 2004. Based on what the officers at the sheriff's department told Cantrell, he suspected that the woman might be Jodie McAtee. He asked the police to check her wrist for a special tattoo. From this, the police finally determined that she was Jodie McAtee.

Over the course of the next several hours, McAtee cooperated with the police, confessing that she was purchasing pseudoephedrine with the intent to manufacture methamphetamine. She cooperated against her estranged husband, Johnny McAtee, by telling the police that they were preparing to cook a large batch of methamphetamine at her residence within the next couple days or sooner if the necessary ingredients could be secured. Jodie McAtee had recently kicked Johnny McAtee out of the residence and he

3

had taken all of his belongings with the possible exception of a few small items. He was at her residence on March 8 and 9, 2005.

In the course of the defendant's cooperation, she asked the police officers at one point whether she needed a lawyer. She told the police that she did not know if she should talk without one. The police simply informed her that they could not tell her what to do and that they could not give her advice concerning that matter. She continued to speak with the police and did not make an unequivocal request for a lawyer. During the course of this interview, she told the police about how her husband received pseudoephedrine from a place in Wisconsin using the name J and R Distributing. She told them about Defendant Johnny McAtee's methamphetamine manufacturing and even drew a floor plan for the police to assist in their entry of the residence. She consented to a search of the house.

After the interview was completed, Joshua Lupkes of the IDNE contacted IDNE Agent Darrell Simmons and asked that he secure a search warrant for the McAtee residence. Simmons contacted the Delaware County Attorney who reviewed the proposed warrant that was ultimately submitted to a state court judge. The request for a warrant was granted by a state court judge who directed the agents to conduct "an immediate search" of the premises.[1]

Police officers approached the McAtee residence in rural Delaware County, Iowa, in the early morning hours of March 9, 2005. They believed that they would find a substantial methamphetamine laboratory in process or in preparation. As they approached the residence, they observed that lights were on inside the house. Some officers were designated to monitor the perimeter of the residence and the various outbuildings contained

---

[1] Defendant Johnny McAtee makes much of the fact that the language commanding an immediate search is found on a pre-printed form. Obviously, the court presumes that the judge knew what she was doing when she signed the warrant and meant everything she said when she directed the police to conduct the search.

4

thereon. The entry team consisted of at least four police officers dressed in self-contained breathing apparatuses (SCBA) due to the volatile nature of toxic chemicals used in the manufacture of methamphetamine. Major William Yount of the Linn County Sheriff's Office was at the door but was not wearing a SCBA. Accordingly, IDNE Agent Darrell Simmons knocked loudly on the door and Major Yount announced the presence of the police and their intention to execute a search warrant. Defendant Johnny McAtee admitted at the hearing that he heard both the knock and the announce.

As Major Yount announced for the second time, Officer Tony Robinson and another police officer observed activity in a nearby window. Robinson observed the drapes or blinds being moved several inches so that the occupant could see outside. When the blinds went back to their original position and no one answered the door, Robinson directed Mark Strait to use the battering ram to forcibly enter the door. Strait failed to observe that the deadbolt lock on this particular door was considerably higher up than it would be on a typical door. Accordingly, he was ramming the door handle and had to be redirected to ram the deadbolt lock. Approximately fifteen seconds elapsed between the original knock and announce and the officers' securing entry to the residence.

Once inside, the police officers went swiftly through the residence. They found stairs leading to the basement and yelled for the occupants to recognize their presence and surrender. Defendant Johnny McAtee was in the basement under the stairs.[2] Another occupant was hiding in a closet in an upstairs bedroom. A third man was sitting in a computer room on the main floor of the residence. Finally, there was a young female in the basement with Defendant Johnny McAtee. All of the occupants in the house were fully clothed and none were wearing pajamas.

Johnny McAtee testified that from the time the police first knocked and announced he did not have enough time to even turn around. He stated that it was his intention to

---

[2] He testified that he was down there checking on a heating oil tank.

answer the door for the police but that the police somehow were able to ram the door, get into the house, and down the stairs before he could come upstairs to greet them. The court simply does not believe this testimony. The court believes that both McAtee and the other individual were hiding from the police. Defendant McAtee quickly surrendered by coming out from under the stairs, going down on all fours, and then lying down on the floor.

There are a number of things to be concerned about when police execute a search warrant at a methamphetamine laboratory. The first priority is the safety of officers and others present at the residence. All of the occupants of the residence were escorted from the house. Before the search was complete, these individuals had all been transported to the sheriff's office. Accordingly, upon completion of the search, Darrell Simmons left a copy of the warrant and an inventory of items taken inside the residence. The McAtees were both detained and have not returned to that residence.

Defendant Jodie McAtee is a Canadian citizen. She was deported or removed from the United States in September 2004. At that time, she signed a form acknowledging her rights and consenting to her removal. One of the rights that she was informed of was her right to contact the Canadian Consulate. Following her arrest on March 9, 2005, however, Ms. McAtee was not again informed of her right to contact the Canadian Consulate. She testified that her daughter in Canada contacted the Consulate for her a month-and-a-half after she had been detained. The Consulate contacted Ms. McAtee at the Linn County Jail to find out if she had been informed of her rights. They also offered to contact her family. Ms. McAtee had, of course, already been in contact with her family. She had an attorney appointed to represent her immediately upon her initial appearance in this court on March 9, 2005. She certainly suffered no prejudice as a result of the government's failure to inform her of her right to contact the Canadian Consulate.

## CONCLUSIONS OF LAW

### Probable Cause for the March 9, 2005, Warrant

Defendant Johnny Ray McAtee contends that the warrant was not supported by a finding of probable cause. The affidavit in this case states the following at Attachment A:

> On Tuesday March 8, 2005, Jodi McAtee was observed by law enforcement obtaining large quantifies of pseudo ephedrine [sic] from assorted stores in Cedar Rapids, Iowa. McAtee was in possession of approximately 3.5 grams of methamphetamine, a pipe used to ingest controlled substances, 12 boxes of pseudo ephedrine [sic] and 20,000 matches. McAtee was interviewed by law enforcement and gave the following details. MCATEE is currently in custody on immigration charges. McAtee is married to JOHN MCATEE (DOB 8/6/67) and they reside at 3238 200th Ave outside Ryan Iowa [sic]. Jodi advised that with in [sic] the last week she has observed a duffel bag containing blister packs of pseudo ephedrine [sic], and 6 cases of matches. On Sunday March 6, 2005 JOHN MCATEE gave JODI MCATEE between 1/2 and 1 gram of methamphetamine. Around 8:00 A.M., on March 8, 2005, JOHN MCATEE left the residence and advised JODI MCATEE that he was going to go to Madison, Wisconsin to purchase pills and matches. JODI MCATEE also advised law enforcement that she received a call from JOHN MCATEE around 5:00 P.M., on March 8, 2005, stating that JOHN had returned from Madison, Wisconsin. JODI MCATEE also advised law enforcement that she observed a T-shirt in the basement on March 8, 2005 that had iodine crystals in it. JODI MCATEE advised that other individuals that manufacture with JOHN MCATEE include MIKE MOSS and TERRY NESS.
>
> Criminal history for John McAtee includes Convictions for Conspiracy to Manufacture Methamphetamine in 1998 (Felony), Possession of Precursors in 2002 (Felony), and Possession of Red Phosphorous in 2002 (Felony).

Government's Exhibit 1.

Because the evidence sought to be suppressed was gathered pursuant to a search warrant, the court employs the standard set forth in Illinois v. Gates, 462 U.S. 213 (1983), to determine the existence of probable cause. It is well established that a warrant affidavit must show particular facts and circumstances in support of the existence of probable cause sufficient to allow the issuing judicial officer to make an independent evaluation of the application for a search warrant. The duty of the judicial officer issuing a search warrant is to make a "practical, commonsense decision" whether a reasonable person would have reason to suspect that evidence would be discovered, based on the totality of the circumstances. United States v. Peterson, 867 F.2d 1110, 1113 (8th Cir. 1989). Sufficient information must be presented to the issuing judge to allow that official to determine probable cause; his action cannot be a mere ratification of the bare conclusion of others. Gates, 462 U.S. at 239. However, it is clear that only the probability, and not a prima facie showing, of criminal activity is required to establish probable cause. Id. at 235.

This court does not review the sufficiency of an affidavit de novo. An issuing judge's determination of probable cause should be paid great deference by reviewing courts. Id. at 236. The duty of the reviewing court is simply to ensure that the issuing judge had a substantial basis for concluding that probable cause existed. Id. at 238-39.

Even where probable cause is lacking, the court's inquiry does not end. Pursuant to United States v. Leon, 468 U.S. 897 (1984), in the absence of an allegation that the issuing judge abandoned a neutral and detached role, suppression is appropriate only if the affiant was dishonest or reckless in preparing the affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause. In Leon, the United States Supreme Court noted the strong preference for search warrants and stated that in a doubtful or marginal case a search under a warrant may be sustainable where without one, it would fail. Id. at 914.

> Searches pursuant to a warrant will rarely require any deep inquiry into reasonableness, . . . for a warrant issued by a magistrate normally suffices to establish that a law enforcement officer has acted in good faith in conducting the search. . . . Nevertheless, the officer's reliance on the magistrate's probable-cause determination and on the technical sufficiency of the warrant he issues must be objectively reasonable, . . . and it is clear in some circumstances the officer will have no reasonable grounds for believing that the warrant was properly issued.

Id. at 922-23.

Pursuant to Leon, suppression remains an appropriate remedy: (1) where the magistrate issuing a warrant was mislead by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard for the truth[3]; (2) where the issuing magistrate wholly abandons the judicial role and becomes a "rubber stamp" for the government; (3) where the officer relies on a warrant based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; or (4) where the warrant is so facially deficient in failing to particularize the place to be searched or the things to be seized that the executing officers cannot reasonably presume it to be valid. In Leon, the remedy of suppression was not ordered despite the fact that the affidavit in that case did not establish probable cause to search the residence in question. Further, the information was fatally stale and failed to properly establish the informant's credibility. The standard announced in Leon is an objective standard.

Specifically, the defendant contends that the affidavit does not contain information from which the state court judge could make a finding of the reliability of Jodi McAtee who had supplied so much information for this warrant. When describing her reliability on Attachment B to the search warrant, Darrell Simmons stated that "Informant is the wife

---

[3] See Franks v. Delaware, 438 U.S. 154 (1978).

9

of one of the persons sought (John McAtee) and has personal, fresh and apparently reliable information." From the affidavit, it is clear that Jodi McAtee had given the police detailed information concerning an ongoing attempt to manufacture methamphetamine for which the police had just caught her collecting pseudoephedrine. She not only implicated her husband but she also clearly implicated herself. For the same reason that statements against penal interest, Fed. R. Evid. 804(3), and admissions of a party opponent, Fed. R. Evid. 801(d)(2), are believed to be uniquely reliable, the confession of Jodi McAtee containing incriminating information about activities at her own residence bear sufficient indicia of reliability.

Counsel for Defendant Johnny McAtee asked questions at the hearing suggesting that Agent Simmons should have informed the judge of facts indicating Jodie McAtee's general unreliability. These would include her initial deception concerning her identity and the fact that she had been previously convicted of forgery. This back-door attempt at a Franks v. Delaware hearing cannot prevail for two reasons. First, there is no evidence that Simmons knew the defendant had been convicted of forgery. Second, neither of the defendants made the required showing necessary to secure a Franks v. Delaware hearing.[4]

---

[4] In order to prevail on a challenge to a warrant affidavit pursuant to Franks v. Delaware, 438 U.S. 154 (1978), the challenger must show (1) that a false statement knowingly and intentionally or with reckless disregard for the truth, was included in the affidavit and (2) that the affidavit's remaining content is insufficient to establish probable cause. United States v. Gladney, 48 F.3d 309, 313 (8th Cir. 1995).

> To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of

(continued…)

In any event, these kinds of details concerning the general credibility of an informant are insufficient to support a Franks v. Delaware challenge.[5]

Defendant McAtee has only made a passing reference to the good faith exception to suppression found in United States v. Leon. If somehow probable cause were found to be lacking in this warrant, it appears obvious that suppression would not be appropriate due to the good faith exception to suppression found in Leon.

Execution of the Warrant

Both defendants contend that the police did not properly secure a warrant that permitted nighttime execution and that police violated the knock and announce rule. Because these are both matters implicating the Fourth Amendment to the United States Constitution, the court applies federal constitutional law as it relates to both.

Prior to 2004, the Eighth Circuit Court of Appeals had held that the question as to whether federal or state law governed a search in which federal agents participated depended on whether "federal agents are a significant part of the search." United States v. Murphy, 69 F.3d 237, 242 (8th Cir. 1995), quoted in United States v. Tavares, 223 F.3d 911, 914 (8th Cir. 2000); United States v. Scroggins, 361 F.3d 1075, 1081 (2004).

---

[4](…continued)
> witnesses should be furnished, or their absence satisfactorily explained. Allegations of negligence or innocent mistake are insufficient.

Franks v. Delaware, 438 U.S. at 171.

[5]The fact that an informant had a criminal record and was cooperating under a plea agreement is not critical to the finding of probable cause. United States v. Flagg, 919 F.2d 499 (8th Cir. 1990); United States v. Martin, 866 F.2d 972 (8th Cir. 1989) (omission of fact of informant's drug addiction of no consequence to determination of probable cause). The fact that the police omitted information that an informant had been a drug dealer, was cooperating with the police in order to receive leniency, and was being paid by the police did not warrant relief in United States v. Wold, 979 F.2d 632 (8th Cir. 1992). See also United States v. Reivich, 793 F.2d 957 (8th Cir. 1986). It is not necessary to notify the magistrate of an informant's criminal history if the informant's information is at least partially corroborated. United States v. Parker, 836 F.2d 1080, 1083 (8th Cir. 1987).

However, the Eighth Circuit Court of Appeals, in United States v. Scroggins, held that this determination was unnecessary because recent United States Supreme Court precedent had rendered the determination irrelevant. Scroggins, 361 F.3d at 1080.

In United States v. Murphy, the Eighth Circuit Court of Appeals stated that "when federal agents are a significant part of a search conducted pursuant to a state warrant [, federal law] applies." 69 F.3d at 242. Likewise, if a search involved only state officers executing state warrants, state, not federal, law applied. Id. The Eighth Circuit Court of Appeals expanded upon this determination in United States v. Tavares, setting a relatively low threshold as to what constitutes federal involvement. 223 F.3d at 916. Tavares held that "when federal agents directly participate in a search conducted pursuant to a state warrant, but with an expectation of federal prosecution," federal law likely applies. Id.

However, these determinations depended upon the assumption that federal search requirements, such as those in 18 U.S.C. § 3109 and Fed. R. Crim. P. 41, are somehow more restrictive than state requirements. In doing so, courts examined whether the applicable federal law was somehow "more restrictive than the Fourth Amendment." United States v. Mack, 117 F. Supp. 2d 935, 941 (W.D. Mo. 2000), quoted in Scroggins, 361 F.3d at 1080. The United States Supreme Court ended this discussion, however, with its pronouncement in United States v. Ramirez, 523 U.S. 65, 72–73 (1998). Scroggins, 361 F.3d at 1080; see United States v. Banks, 540 U.S. 31, 42 (2003). Ramirez held that the applicable federal law and the Fourth Amendment "codified the same common-law knock-and-announce principle, and . . . both are subject to the same exceptions." Id. Because the applicable federal law and the Fourth Amendment "are coextensive," an inquiry into whether federal or state law applies to the search "is immaterial," and the argument as to the validity of the knock and announce should be evaluated under the Fourth Amendment. Scroggins, 361 F.3d at 1080.

## Nighttime Execution of Search Warrant

Federal law permits nighttime execution of controlled substances search warrants if the judicial officer is satisfied that there is probable cause to believe that grounds for the warrant exist and for its service in the nighttime. 21 U.S.C. § 879. A nighttime search under the federal statute requires no special showing other than a showing that the contraband is likely to be on the property or person to be searched at that time. United States v. Keene, 915 F.2d 1164, 1168 (8th Cir. 1990), citing Gooding v. United States, 416 U.S. 430, 458 (1974).

The Code of Iowa specifically states that state search warrants may be executed "in the day time or in the night time." Code of Iowa § 808.5. Because a federal court confronted with a suppression issue is not simply attempting to determine whether there has been compliance with state law, the legality of the search and seizure is not determined by reference to such a state statute but rather is resolved by Fourth Amendment analysis. United States v. Maholy, 1 F.3d 718, 721 (8th Cir. 1993); see also Keene, 915 F.2d at 1167.

Courts have recognized that the time of execution of a warrant can be important to determining the reasonableness of a warrant under Fourth Amendment analysis. In United States v. Gibbons, 607 F.2d 1320 (10th Cir. 1979), the Court noted that prior to the adoption of the Bill of Rights there was a strong aversion to nighttime searches. See also United States v. Morehead, 959 F.2d 1489, 1497 (10th Cir. 1992). In fact, nighttime searches of a dwelling were described as "the evil in its most obnoxious form." Id. at 1326. However, when examining true violations of the general rule that search warrants be executed during the day, courts have consistently looked to determine whether the defendant was prejudiced by the execution of a warrant in the nighttime. United States v. Bieri, 21 F.3d 811, 816 (8th Cir. 1994); United States v. Schoenheit, 856 F.2d 74, 77 (8th Cir. 1988). In addition, the good faith exception set forth in United States v. Leon applies. Bieri, 21 F.3d at 816; Maholy, 1 F.3d at 722. The defendant here has made absolutely

no attempt to show any prejudice. Frisby v. United States, 79 F.3d 29, 32 (6th Cir. 1996). He was awake, fully clothed, and testified that he was willing to answer the door when he heard the officers knock and announce.

The same Court that determined the Gibbons decision noted above also decided a case particularly close on point factually. In United States v. Callwood, 66 F.3d 1110 (10th Cir. 1995), officers approached a judge's home at 1:30 a.m. to secure a search warrant. The affidavit requested that the search be allowed immediately and the search warrant explicitly made the affidavit part of the warrant. Upon these facts, the federal district court found that the issuing judge had authorized a nighttime search. In the case now before the court, the support for such a factual finding is much stronger. Here, the warrant specifically commanded the officers to immediately conduct the search and Agent Simmons told the judge that it would be executed right away.

In sum, there is no question but that a nighttime warrant was issued here. State law permits it, and compliance with state law is relevant to establishing the good faith of the police officers. United States v. Baker, 16 F.3d 854 n.1 (8th Cir. 1994). The defendants were not prejudiced by the timing of the warrant's execution.

## Knock and Announce

Common law knock and announce principles are part of the Fourth Amendment reasonableness inquiry. Wilson v. Arkansas, 514 U.S. 927 (1995); United States v. Hawkins, 102 F.3d 973, 976 (8th Cir. 1996). While a delay in responding to a knock and announce can create an inference that admittance has been refused, generally a delay in less than five seconds creates no such inference. In United States v. Jones, 133 F.3d 358, 361 (5th Cir. 1998), the Court summarized the authorities on this issue:

> Generally, a delay of five-seconds or less after knocking and announcing has been held a violation of 18 U.S.C. § 3109. United States v. Moore, 91 F.3d 96, 98 (10th Cir. 1996) (officers waited 3 seconds at most and the Government failed even to allege that the officers harbored a concern for their safety); United States v. Lucht, 18 F.3d 541, 550-51 (8th Cir.

14

1994) (waiting 3 to 5 seconds before entering was not long enough); United States v. Rodriguez, 663 F. Supp. 585, 587-88 (D.D.C. 1987) (delay of 3 to 5 seconds was insufficient); United States v. Marts, 986 F.2d 1216, 1217-18 (8th Cir. 1993) (lapse of less than 5 seconds held not sufficient to infer refusal of admittance necessary to comply with § 3109); United States v. Nabors, 901 F.2d 1351, 1355 (6th Cir. 1990) (forced entry only seconds after announcing the officers' authority and purpose must be "carefully scrutinized"); United States v. Mendonsa, 989 F.2d 366, 370 (9th Cir. 1993) (waiting 3 to 5 seconds was insufficient). However, when officers have waited more than 5 seconds, the courts have generally held that there was no violation of § 3109. United States v. Markling, 7 F.3d 1309, 1318 (7th Cir. 1993) (officers waited 7 seconds before starting to try to knock the door down); United States v. Spriggs, 996 F.2d 320, 322-23 (D.C. Cir. 1993) (officers waited 15 seconds before attempting to enter); United States v. Ramos, 923 F.2d 1346, 1355-56 (9th Cir. 1991) (after two requests and 45 seconds); United States v. Myers, 106 F.3d 936, 940 (10th Cir.) (agents waited 10 seconds before battering the door down), cert. denied, 520 U.S. 1270, 117 S. Ct. 2446, 138 L. Ed. 2d 205 (1997); United States v. Knapp, 1 F.3d 1026, 1030-31 (10th Cir. 1993) (10 to 12 seconds was sufficient to wait); United States v. Gatewood, 60 F.3d 248, 250 (6th Cir. 1995) (no violation when officers waited about 10 seconds between announcement and entry).

The knock and announce issue in this case is a factual dispute between the parties as to how long the police officers waited before entering the McAtee residence. The court has found that the lights were on in the house, the occupants were awake, alert, and fully dressed when the police knocked and announced. Defendant Johnny McAtee admits hearing the knock and announce. The police waited an appropriate amount of time in light of these facts and the observation of an occupant at the window blinds who did not answer the door.

### Alleged Violation of the Vienna Convention

The significance of the Vienna Convention on consular relations is thoroughly discussed in United States v. Ortiz, 315 F.3d 873, 885-88 (8th Cir. 2002). The Eighth Circuit Court of Appeals held that even if that Convention creates an individually-enforceable right, it would not follow that a defendant's pre-notification confession should be excluded merely because the Convention has been violated. The Vienna Convention does not require that interrogation cease until consular contact is made. Id. at 887.

In this case, Defendant Jodie McAtee was first confronted by the police at 5:00 PM. She was interrogated later at the Linn County Sheriff's Department. She was not given permission to make telephone calls at that time for the obvious reason that police were planning to search her residence where they believed that her husband would be manufacturing methamphetamine. The police would also not want her to contact a consulate whose function, in part, would be to communicate with family members. Finally, when Jodie McAtee testified at the hearing, she did not even suggest that she suffered any prejudice from this lack of timely consular notification. A complaint was filed in this matter on March 9, 2005. The defendant appeared before the court at 3:00 PM with her attorney, Anne Laverty. She was informed of her rights to remain silent and to counsel at that time. Accordingly, she was brought before the court and given a lawyer within twenty-one hours of when the police first approached her. The defendant suffered no prejudice as a result of the delayed notification of the Canadian Consulate.

### Failure to Deliver a Copy of the Warrant to Johnny McAtee

The defendant contends that the police violated Fed. R. Crim. P. 41(f)(3). This section states that the officer executing the warrant must give a copy of the warrant, and a receipt for the property taken, to the person from whom or from whose premises the property was taken or leave a copy of the warrant and receipt at the place where the officer took the property. Code of Iowa § 808.8 provides that upon a seizure pursuant to a warrant, the officer shall furnish an itemized receipt for such property to the person from

whom taken or in whose possession it was found, if such person can be located, or a copy of the inventory may be left on the premises searched.

By the time the search was completed, Defendant Johnny McAtee had already been taken into custody and transported to the sheriff's office. Accordingly, a copy of the inventory was left at the premises searched. Defendant McAtee simply could not identify any prejudice suffered by him by reason of his failure to see the warrant and inventory that evening.

The defendant does not argue that this requirement is of constitutional dimension. He simply claims a technical violation of Rule 41. This court believes that Code of Iowa § 808.8 applies, but federal and state law both provide the same alternative means for delivery of the warrant and inventory to the affected person. However, as the Eighth Circuit Court of Appeals stated in United States v. Nichols, 344 F.3d 793, 799 (8th Cir. 2003), "Where executing officers fail to abide by the dictates of Rule 41, suppression is only required if a defendant can demonstrate prejudice." See also United States v. Hepperle, 810 F.2d 836, 839 (8th Cir. 1987). Because the defendant failed to demonstrate prejudice, this argument should be rejected.

## Defendant Johnny McAtee's Motion for Severance

Defendant Johnny McAtee moved to sever his trial from the co-defendants arguing that the admission of Jodie McAtee's confession violates his Sixth Amendment right to confrontation as announced in Bruton v. United States, 391 U.S. 123 (1968). If she does not testify at trial, admission of her confession that implicates co-defendants will violate the co-defendants' Sixth Amendment rights.

The government proposes a solution that permits the defendants to be jointly tried. The government will admit only those portions of Jodie McAtee's confession that incriminate herself. It will not elicit any portions of the confession that implicate co-defendants. Under these circumstances, no violation of the Bruton rule will take place.

The defendant further contends that admission of these statements suggests that Johnny Ray McAtee physically abused and mentally controlled Jodie McAtee and that he forced her to participate in methamphetamine manufacturing. Again, because her confession will be redacted to remove references to the co-defendants, this portion of the motion for severance is also moot.

For the reasons discussed above, **IT IS RECOMMENDED**, unless any party files objections[6] to the Report and Recommendation by **Thursday, June 9, 2005, at 12:00 Noon**, that the defendants' motions to suppress be denied and that the motion for severance of trial be denied.

June 2, 2005.

JOHN A. JARVEY
Magistrate Judge
UNITED STATES DISTRICT COURT

---

[6]Any party who objects to this report and recommendation must serve and file specific, written objections by **Thursday, June 9, 2005, at 12:00 Noon.** A party objecting to the report and recommendation must arrange promptly for a transcription of all portions of the record the district court judge will need to rule on the objections.