**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION**

UNITED STATES OF AMERICA,

        Plaintiff,

vs.

JOHNNY RAY MCATEE, and JODIE
ELAINE MCATEE,

        Defendants.

No. CR 05-2005-LRR

**ORDER EXPOUNDING UPON
THE COURT'S
JUNE 14, 2005 ORDER**

_____

## TABLE OF CONTENTS

I. INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II. PROCEDURAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III. STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

IV. LEGAL ANALYSIS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
    A. Findings of Fact . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
    B. Conclusions of Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
        1. Probable Cause for the March 9, 2005 Warrant . . . . . . . . . . . 11
        2. Nighttime Execution of Search Warrant . . . . . . . . . . . . . . . . . 15
        3. Failure to Deliver a Copy of the Warrant to Johnny McAtee . . . . 16
        4. Report and Recommendation to Deny Severance . . . . . . . . . . . 17

V. CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

## I.  INTRODUCTION

The matter before the court is its June 14, 2005 Order in which it denied Defendant Johnny Ray McAtee's Motion to Sever (docket no. 32, 36) and Motion to Suppress Evidence (docket no. 33) and Defendant Jodie Elaine McAtee's Motion to Suppress Evidence (docket no. 38); adopted the Report and Recommendation that such Motions be denied (docket no. 66); and overruled Johnny Ray's Objections to the Report and Recommendation of Magistrate re Suppression (docket no. 88) and Jodie Elaine's Objections to the Report and Recommendation (docket no. 89).  The court's findings of facts and conclusions of law supporting the June 14, 2005 Order are set forth below.

## II.  PROCEDURAL BACKGROUND

On June 8, 2005, Johnny Ray McAtee and Jodie Elaine McAtee were charged in a six-count Second Superseding Indictment with codefendant Matthew Goesse.  Count 1 charges on or about March 8 and 9, 2005, all three defendants did knowingly and intentionally attempt to manufacture, and aid and abet the attempt to manufacture, 50 grams or more of actual methamphetamine (pure), a Schedule II controlled substance, in violation of 21 U.S.C. § § 846, 841(a)(1), 841(b)(1)(A), and 851, and 18 U.S.C. § 2. Count 1 alleges Johnny Ray committed the offense charged after having been convicted previously of two felony drug offenses, and Jodie Elaine committed the offense charged after having been convicted previously of a felony drug offense.  Count 2 charges on or about March 8, 2005, Jodie Elaine, an alien, was knowingly and unlawfully found in the United States after having been removed from the United States without obtaining the express consent to reapply for admission, and after having been removed subsequent to conviction for commission of an aggravated felony, in violation of 8 U.S.C. § 1326(a) and (b)(2).  Count 3 charges on or about March 8, 2005, Jodie Elaine and Goesse did knowingly and intentionally possess and aid and abet the possession of pseudoephedrine,

a list I chemical, knowing and having reasonable cause to believe that the pseudoephedrine would be used to manufacture methamphetamine, a Schedule II controlled substance, in violation of 21 U.S.C. § 841(c)(2) and 18 U.S.C. § 2. Count 4 charges on or about March 8, 2005, Jodie Elaine did knowingly and intentionally possess red phosphorous, a list I chemical, knowing and having reasonable cause to believe that the red phosphorous would be used to manufacture methamphetamine, a Schedule II controlled substance, in violation of 21 U.S.C. § 841(c)(2). Count 5 charges on or about March 8 and 9, 2005, Johnny Ray did knowingly and intentionally possess pseudoephedrine, a list I chemical, knowing and having reasonable cause to believe that the pseudoephedrine would be used to manufacture methamphetamine, a Schedule II controlled substance, in violation of 21 U.S.C. § 841(c)(2). Count 6 charges on or about March 8 and 9, 2005, Johnny Ray did knowingly and intentionally possess red phosphorous, a list I chemical, knowing and having reasonable cause to believe that the red phosphorous would be used to manufacture methamphetamine, a Schedule II controlled substance, in violation of 21 U.S.C. § 841(c)(2).

On May 9, 2005, Johnny Ray filed a Motion to Suppress Evidence (docket no. 33) and a Motion to Sever (docket no. 32, 36), and Jodie Elaine filed a Motion to Suppress Evidence (docket no. 38). On May 23, 2005, the government filed a Resistance to Motions to Suppress (docket no. 48). On June 2, 2005, the government filed a Resistance to Motion to [Sever] (docket no. 64).

On June 1, 2005, Chief Magistrate Judge John A. Jarvey held a hearing on the Motions (the "hearing"). Johnny Ray was personally present and represented by attorney John Broz. Jodie Elaine was personally present and represented by attorney Anne Laverty. Assistant United States Attorney Daniel Tvedt represented the government. On June 2, 2005, Chief Magistrate Judge Jarvey filed a Report and Recommendation (the "Report and

Recommendation") (docket no. 66) in which he recommends the court deny Johnny Ray's Motions to Suppress and Sever and Jodie Elaine's Motion to Suppress. On June 9, 2005, Johnny Ray filed his Objections to the Report and Recommendation of Magistrate re Suppression ("Johnny Ray's Objection") (docket no. 88) and Jodie Elaine filed her Objections to Report and Recommendation (docket no. 89).

On June 14, 2005, the court issued a brief written ruling (docket no. 98) in which it: (1) denied Johnny Ray's Motion to Sever and Motion to Suppress Evidence and Jodie Elaine's Motion to Suppress Evidence; (2) adopted the Report and Recommendation that such Motions be denied; (3) overruled Johnny Ray's Objection and Jodie Elaine's Objection; and (4) indicated this order detailing the court's findings of facts and conclusions of law would follow.

On June 14, 2005, Jodie Elaine entered pleas of guilty to Count 2 of the Second Superseding Indictment and the Information. On June 15, 2005, the court accepted Jodie Elaine's pleas. The court therefore finds the matters in regard to Jodie Elaine are moot.

On June 15, 17, and 20, 2005, Johnny Ray was tried before a jury. On June 20, 2005, the jury returned verdicts of guilty as to all three Counts with which Johnny Ray was charged. The matters in regard to Johnny Ray were fully submitted prior to the court's June 14, 2005 Order on these matters, when the court indicated the following findings of fact and conclusions of law would be forthcoming.

### III. STANDARD OF REVIEW

The district court judge is required to make a *de novo* determination of those portions of the report or recommendation to which the movant objects. 28 U.S.C. § 636(b)(1)*; see also United States v. Lothridge*, 324 F.3d 599, 600 (8th Cir. 2003). The district court judge may accept, reject, or modify, in whole or in part, the magistrate judge's findings or recommendations. 28 U.S.C. § 636(b)(1); *see also United States v.*

*Trice*, 864 F.2d 1421, 1424 (8th Cir. 1988).

Johnny Ray made specific, timely objections in this case. Therefore, *de novo* review of "those portions of the report or specified proposed findings or recommendations to which objection is made" is required. *See* 28 U.S.C. § 636(b)(1).

## IV. ANALYSIS

### A. Factual Findings

Johnny Ray contends the Report and Recommendation's Findings of Fact ignore the following facts which were proved at the hearing: (1) the search warrant application had no indicia of reliability for Jodie Elaine; (2) Iowa Division of Narcotics Enforcement ("IDNE") Agent Darrell Simmons both prepared the search warrant application and led the team executing the warrant; (3) many of the officers involved in the search warrant application and the search warrant execution were members of the federal Drug Enforcement Agency ("DEA") Task Force and utilized DEA forms; (4) Johnny Ray twice requested to see a copy of the search warrant while he was at the search scene and his requests were denied; (5) the officers executing the search warrant only waited two or three seconds after knocking and announcing to breach the door to his home. Johnny Ray's Objection at 3.

First, Johnny Ray objects to the Findings of Fact because it does not include the fact that "the search warrant application had no indicia of reliability for Jodie McAtee." *Id.* Johnny Ray's statement that the search warrant application had no indicia of reliability for Jodie McAtee is inaccurate. The search warrant application contains a page upon which the peace officer executing the application must indicate the reason or reasons the informant from whom he received the information upon is reliable. Gov't Ex. 1 at 4. On this page, the executing peace officer indicated an "Other" reason for determining the reliability of the informant, and wrote in specifically why Jodie Elaine could be considered

a reliable informant. *Id*. The peace officer wrote specifically: "Informant is the wife of one of the persons sought (John McAtee) and has personal, fresh and apparently reliable information." *Id*. Because the executing officer indicated the reason for reliability at the "Other" blank, it was unnecessary for him to also choose one of the reasons for reliability preprinted on the form. Therefore, Johnny Ray's objection as to the absence of this factual finding is overruled.

As to Johnny Ray's second and third objections, review of the law on this issue reveals that such facts are not necessary to determine whether he is entitled to the relief he seeks, see Report and Recommendation at 11-12 (holding it is unnecessary to determine whether state law enforcement or federal law enforcement executed the search because the Fourth Amendment was the applicable rule of law regardless). As to Johnny Ray's fourth objection, review of the law on this issue reveals that such facts are not necessary to determine whether Johnny Ray is entitled to the relief he seeks, see Part IV.B.3. *infra*. Therefore, Johnny Ray's objections as to the absence of these factual findings are overruled.

Finally, Johnny Ray objects to the finding the officers waited more than two or three seconds after knocking and announcing to breach the door to his home. After *de novo* review of the transcript of the hearing, the court agrees with Chief Magistrate Judge Jarvey's assessment of Johnny Ray's credibility. The court finds Johnny Ray's testimony is amply contradicted by the testimony of Special Agent Lupkes, Agent Simmons, and Officer Anthony Robinson. Hearing Tr. at 17, 48-49, 77-80. Therefore, Johnny Ray's objection as to this factual finding is overruled.

After *de novo* review of the record, the court adopts, and sets forth in their entirety, Chief Magistrate Judge Jarvey's Findings of Fact:

> Linn County, Iowa, like most rural places in the

Midwest, has a considerable methamphetamine problem. Deputy Sheriff Mark Strait of the Linn County Sheriff's Department noticed that a significant number of receipts for precursor chemicals were found at laboratory sites showing that these precursors had been purchased at Target Stores. The Target Stores are anxious to assist law enforcement in surveilling and identifying persons purchasing those items. Target Stores have sophisticated surveillance abilities which assist the efforts of police as well. Target employees at the Cedar Rapids store on Blairs Ferry Road have kept track of license plates of cars driven by people buying suspicious amounts of precursor items.

On March 8, 2005, law enforcement officers from the [IDNE], the Linn County Sheriff's Department, and the Cedar Rapids Police Department set up surveillance inside Target's Blairs Ferry store and in its parking lot. At approximately 5:00 PM that day, the police observed Defendant Jodie McAtee and codefendant Matthew Goesse purchasing pseudoephedrine at that store. The police followed McAtee and Goesse to determine whether they were purchasing pseudoephedrine from other locations as well. Sure enough, these defendants then went to the other side of town, separately entered a Dollar General store and a K-Mart store, and purchased pseudoephedrine. When they came out of their respective stores, each of them went to the other store and again purchased pseudoephedrine.

Police then approached McAtee and Goesse in the parking lot of the store at which they were parked. After a five-minute discussion with them, they were handcuffed and later transported to the Linn County Sheriff's Department where they were charged with possession of precursor items with intent to manufacture methamphetamine. While they were at the parking lot, a police officer advised Jodie McAtee of her Miranda rights. She told the officer that she understood those rights and was willing to answer his questions.

Upon her arrest, the police had considerable difficulty determining Jodie McAtee's [identity]. She identified herself

as Paulette McClung. She produced a Canadian driver's license in that name but with a different date of birth than the one she verbally gave to the police. The police were not convinced by her claim to be Paulette McClung. Because she had produced a Canadian driver's license, police contacted Agent Chris Cantrell of the Bureau of Immigrations and Customs Enforcement. Cantrell had participated in the deportation or removal hearing related to Jodie McAtee in September 2004. Based on what the officers at the sheriff's department told Cantrell, he suspected that the woman might be Jodie McAtee. He asked the police to check her wrist for a special tattoo. From this, the police finally determined that she was Jodie McAtee.

Over the course of the next several hours, McAtee cooperated with the police, confessing that she was purchasing pseudoephedrine with the intent to manufacture methamphetamine. She cooperated against her estranged husband, Johnny McAtee, by telling the police that they were preparing to cook a large batch of methamphetamine at her residence within the next couple days or sooner if the necessary ingredients could be secured. Jodie McAtee had recently kicked Johnny McAtee out of the residence and he had taken all of his belongings with the possible exception of a few small items. He was at her residence on March 8 and 9, 2005.

In the course of [Jodie Elaine's] cooperation, she asked the police officers at one point whether she needed a lawyer. She told the police that she did not know if she should talk without one. The police simply informed her that they could not tell her what to do and that they could not give her advice concerning that matter. She continued to speak with the police and did not make an unequivocal request for a lawyer. During the course of this interview, she told the police about how her husband received pseudoephedrine from a place in Wisconsin using the name J and R Distributing. She told them about Defendant Johnny McAtee's methamphetamine manufacturing and even drew a floor plan for the police to assist in their entry

of the residence. She consented to a search of the house.

After the interview was completed, Joshua Lupkes of the IDNE contacted IDNE Agent Darrell Simmons and asked that he secure a search warrant for the McAtee residence. Simmons contacted the Delaware County Attorney who reviewed the proposed warrant that was ultimately submitted to a state court judge. The request for a warrant was granted by a state court judge who directed the agents to conduct "an immediate search" of the premises.

Police officers approached the McAtee residence in rural Delaware County, Iowa, in the early morning hours of March 9, 2005. They believed that they would find a substantial methamphetamine laboratory in process or in preparation. As they approached the residence, they observed that lights were on inside the house. Some officers were designated to monitor the perimeter of the residence and the various outbuildings contained thereon. The entry team consisted of at least four police officers dressed in self-contained breathing apparatuses ("SCBA") due to the volatile nature of toxic chemicals used in the manufacture of methamphetamine. Major William Yount of the Linn County Sheriff's Office was at the door but was not wearing a SCBA. Accordingly, IDNE Agent Darrell Simmons knocked loudly on the door and Major Yount announced the presence of the police and their intention to execute a search warrant. Defendant Johnny McAtee admitted at the hearing that he heard both the knock and the announce.

As Major Yount announced for the second time, Officer Tony Robinson and another police officer observed activity in a nearby window. Robinson observed the drapes or blinds being moved several inches so that the occupant could see outside. When the blinds went back to their original position and no one answered the door, Robinson directed Mark Strait to use the battering ram to forcibly enter the door. Strait failed to observe that the deadbolt lock on this particular door was considerably higher up than it would be on a typical door. Accordingly, he was ramming the door handle and had to be

redirected to ram the deadbolt lock. Approximately fifteen seconds elapsed between the original knock and announce and the officers' securing entry to the residence.

Once inside, the police officers went swiftly through the residence. They found stairs leading to the basement and yelled for the occupants to recognize their presence and surrender. Defendant Johnny McAtee was in the basement under the stairs. Another occupant was hiding in a closet in an upstairs bedroom. A third man was sitting in a computer room on the main floor of the residence. Finally, there was a young female in the basement with Defendant Johnny McAtee. All of the occupants in the house were fully clothed and none were wearing pajamas.

Johnny McAtee testified that from the time the police first knocked and announced he did not have enough time to even turn around. He stated that it was his intention to answer the door for the police but that the police somehow were able to ram the door, get into the house, and down the stairs before he could come upstairs to greet them. The court simply does not believe this testimony. The court believes that both McAtee and the other individual were hiding from the police. Defendant [Johnny] McAtee quickly surrendered by coming out from under the stairs, going down on all fours, and then lying down on the floor.

There are a number of things to be concerned about when police execute a search warrant at a methamphetamine laboratory. The first priority is the safety of officers and others present at the residence. All of the occupants of the residence were escorted from the house. Before the search was complete, these individuals had all been transported to the sheriff's office. Accordingly, upon completion of the search, Darrell Simmons left a copy of the warrant and an inventory of items taken inside the residence. The McAtees were both detained and have not returned to that residence.

Defendant Jodie McAtee is a Canadian citizen. She was deported or removed from the United States in September 2004. At that time, she signed a form acknowledging her

rights and consenting to her removal. One of the rights that she was informed of was her right to contact the Canadian Consulate. Following her arrest on March 9, 2005, however, Ms. McAtee was not again informed of her right to contact the Canadian Consulate. She testified that her daughter in Canada contacted the Consulate for her a month-and-a-half after she had been detained. The Consulate contacted Ms. McAtee at the Linn County Jail to find out if she had been informed of her rights. They also offered to contact her family. Ms. McAtee had, of course, already been in contact with her family. She had an attorney appointed to represent her immediately upon her initial appearance in this court on March 9, 2005. She certainly suffered no prejudice as a result of the government's failure to inform her of her right to contact the Canadian Consulate.

Report and Recommendation at 2-6.

## B. *Conclusions of Law*

### 1. *Probable Cause for the March 9, 2005 Warrant*

Johnny Ray objects to the conclusion of law that there was probable cause to support the search warrant. In Johnny Ray's Objection, he argues: (1) the case law holding statements against penal interest have enhanced reliability is distinguishable; and (2) the good faith exception does not apply where the executing officers' reliance on the warrant is not objectively reasonable.

First, of all, despite Johnny Ray's protestations to the contrary, the case law holding statements against penal interest have enhanced reliability are not distinguishable from the facts in this case. The court must use a "practical, common sense" evaluation of the "totality of the circumstances" in determining whether probable cause to issue a warrant existed. *United States v. Reivich*, 793 F.2d 957, 959 (8th Cir. 1986) (citing *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). "When an affidavit is based in substantial part on information from an informant, the informant's reliability, veracity, and basis of

knowledge are relevant considerations—*but not independent, essential elements*—in finding probable cause." *Id.* (citing *Gates*, 462 U.S. at 238) (emphasis added); *see also, e.g., United States v. Eisenberg*, 807 F.2d 1446, 1451 (8th Cir. 1986). In *Reivich*, the United States Court of Appeals for the Eighth Circuit cited the following factors for finding probable cause: (i) the sources for the facts recited in the affidavit came from identified, named individuals, not anonymous or confidential informants; (ii) the sources for the facts recited in the affidavit had been arrested after purchasing controlled substances (therefore, "the question was not whether a crime was being committed, but only where and by whom"); (iii) the sources for the facts recited "obviously had personal knowledge of the facts they provided," as opposed to secondhand knowledge through hearsay; (iv) the sources for the facts recited were identified in the affidavit and the bases of their knowledge were made clear; and (v) the statements made were against penal interest. 793 F.2d at 959. As to this last factor, the Eighth Circuit Court of Appeals emphasized that statements made against penal interest have increased reliability: "People do not lightly admit a crime and place critical evidence in the hands of the police in the form of their own admissions. . . . That the informant may be paid or promised a 'break' does not eliminate the residual risk and opprobrium of having admitted criminal conduct." *Id.* (noting also that statements against penal interest are no less reliable because the informant "had already been arrested") (citing *United States v. Harris*, 403 U.S. 573, 583-84 (1971)). The Eighth Circuit Court of Appeals ordered courts not to interpret the concept of statements against penal interest "narrowly and grudgingly," but to apply the concept "consistently with the underlying concern of determining the reliability of tips from informants." *Id.* at 959-60.

In the present case, the court finds the case law amply supports Chief Magistrate Judge Jarvey's conclusion of law that the search warrant application established probable

cause to justify the judicial officer's authorization of a search warrant. Jodie Elaine's reliability was only reinforced by the extent to which her statements were against her penal interest. She was stopped by law enforcement officers after they collected evidence she was purchasing methamphetamine precursors. By admitting the location where she and others had already begun the process of manufacturing methamphetamine, she was incriminating herself to the same extent as she was incriminating anyone else involved in the criminal matter, and incriminating herself as to criminal activity of a more serious nature than the crime for which she was stopped by law enforcement. *See United States v. Tyler*, 238 F.3d 1036, 1039 (8th Cir. 2001) ("[The informant's] statements cannot be taken merely as blame-shifting because they admitted to criminal activities beyond those of which the police already knew him to be guilty."). "The Supreme Court in part specifically adopted the flexible 'totality of the circumstances' test for probable cause so that, for example, an informant's clear basis of knowledge could be balanced against, rather than automatically overruled by, that informant's lack of a 'track record' of reliability." *Reivich*, 793 F.2d at 959 (citing *Gates*, 462 U.S. at 233-35). The court does not find determinative that in the present case there was no second source for the facts and law enforcement's corroboration of the facts was minimal. *See Eisenberg*, 807 F.2d at 1451-52 (reviewing a search warrant based on information provided by only one informant and determining probable cause to search existed). In the totality of the circumstances presented here, the search warrant application presented sufficient probable cause that a prudent person could believe contraband could be found at the residence Jodie Elaine alleged she lived in and extensively described. *See Reivich*, 793 F.2d at 960 ("Probable cause requires only a 'fair probability,' and not a certainty, that contraband will be found at the premises to be searched, and the affidavit here on its face provided a substantial basis for a conclusion that such a probability existed."). The court finds the conclusion

of law that probable cause existed to support the issuance of the search warrant is proper.

Second, the court finds Johnny Ray's argument that the good faith exception does not apply here because the executing officers' reliance on the search warrant was not objectively reasonable is meritless. The Eighth Circuit Court of Appeals addressed this exception to the good faith exception to the warrant requirement in *United States v. Carpenter*, 341 F.3d 666 (8th Cir. 2003):

> Where a warrant is "based on an affidavit 'so lacking in indicia of probable cause as to render official belief in its existence *entirely unreasonable,*'" an officer cannot "manifest objective good faith in relying on [the] warrant." *Leon,* 468 U.S. at 923 (quoting *Brown v. Illinois*, 422 U.S. 590, 610-11 (1975 (Powell, J., concurring in part)) (emphasis added). . . . "Entirely unreasonable" is not a phrase often used by the Supreme Court, and we find nothing in *Leon* or in the Court's subsequent opinions that would justify our dilution of the Court's particularly strong choice of words.

*Id*. at 670. This court must decide whether it was "entirely unreasonable" to believe probable cause existed to support the warrant so as to justify the "'extreme sanction of exclusion'" that results from denying application of the good faith exception. *See id*. at 669 (quoting *Leon*, 468 U.S. at 916). "When assessing the objective good faith of police officers executing a warrant, we 'must look to the totality of the circumstances. . . .'" *U.S. v. Weeks*, 160 F.3d 1210, 1212 (8th Cir. 1998) (quoting *U.S. v. Simpkins*, 914 F.2d 1054, 1057 (8th Cir. 1990)); *U.S. v. Martin*, 833 F.2d 752, 756 (8th Cir. 1987)).

Under the totality of the circumstances, it was not "entirely unreasonable" for the officers to believe probable cause existed to support the warrant. *See Carpenter*, 341 F.3d at 670. The officers acted in good faith in executing the search warrant. Therefore, the court finds the search was reasonable and the evidence seized will not be suppressed. The court therefore overrules Johnny's Ray objection as to this conclusion of law.

### 2. Nighttime Execution of Search Warrant

Johnny Ray also objects to the conclusions of law that (1) executing the search warrant at night was not in violation of law; and (2) requiring a defendant to show prejudice effectively gives him no remedy to a violation of the relevant laws. The court finds Johnny Ray's objections meritless. As Chief Magistrate Judge Jarvey stated in the Report and Recommendation, 21 U.S.C. § 879 provides: "A search warrant relating to offenses involving controlled substances may be served at any time of the day or night if the [judicial officer] issuing the warrant is satisfied that there is probable cause to believe that grounds exist for the warrant and for its service at such time." *Cf. United States v. Berry*, 113 F.3d 121, 123 (8th Cir. 1997) (stating that where controlled substances are not involved, "night searches are governed by Federal Rule of Criminal Procedure 41(c)(1)"). The search warrant in the present case related to offenses involving controlled substances. The judicial officer granted the search warrant in the middle of the night, and the language of the search warrant ordered its immediate execution by law enforcement. The issuing judicial officer did not need to specifically state in the warrant that a night search was authorized. *See id.*; 21 U.S.C. § 879.

Furthermore, this court is bound to apply the precedent of the Eighth Circuit Court of Appeals. The Eighth Circuit Court of Appeals has ruled plainly that a defendant must show prejudice or that law enforcement officers acted with "reckless disregard for proper procedure" before a court can suppress evidence recovered following the nighttime execution of a search warrant. *Berry*, 113 F.3d at 123 ("We have held that night searches are not per se unconstitutional and thus 'suppression is not automatic' if [Fed. R. Crim. P.] 41(c)(1) is violated.") (citing *United States v. Bieri*, 21 F.3d 811, 816 (8th Cir. 1994)); *see also, e.g.*, *United States v. Harris*, 324 F.3d 602, 606 (8th Cir. 2003); *United States v. Schoenheit*, 856 F.2d 74, 77 (8th Cir. 1988). Prejudice is only one factor in

determining whether suppression of evidence resulting from a nighttime search is appropriate. *Berry*, 113 F.3d at 123. The threshold question is whether a defendant seeking suppression has shown the search was somehow in violation of law. *Id.* Johnny Ray did not demonstrate the nighttime search was in violation of law. Therefore the court need not consider the prejudice factor. The court therefore overrules Johnny's Ray objection as to this conclusion of law.

### 3. Failure to Deliver a Copy of the Warrant to Johnny McAtee

Johnny Ray objects to the Report and Recommendation, arguing the failure of law enforcement officers executing the search warrant to give him a copy of the warrant during the search—pursuant to his two requests to view the warrant—was a violation of his constitutional rights. This argument is meritless. Johnny Ray directs the court to no law requiring law enforcement to provide a copy of the warrant which they are executing to the individual whose home is being searched at any point prior to leaving the premises.

In his objection, Johnny Ray cites *United States v. Hepperle*, 810 F.2d 836 (8th Cir. 1987). In *Hepperle*, as Johnny Ray acknowledges in his Objection, the Eighth Circuit Court of Appeals held "law enforcement officials are not constitutionally required to present a copy of the search warrant prior to commencing a search, so long as the previously issued warrant is presented before the officers vacate the premises." *Id.* at 839. Furthermore, Rule 41(f)(3) of the Federal Rules of Criminal Procedure provides to law enforcement officers executing search warrants two procedures for leaving a copy of an executed search warrant. Law enforcement officers may "(A) give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken; or (B) leave a copy of the warrant and receipt at the place where the officer took the property." Fed. R. Crim. P. 41(f)(3). In fact, in *Groh v. Ramirez*, 540 U.S. 551 (2004), also cited by Johnny Ray, the United States Supreme Court

acknowledged that "neither the Fourth Amendment nor Rule 41 of the Federal Rules of Criminal Procedure requires the executing officer to serve the warrant on the owner before commencing the search." *Id*. at 562 n.5.

In this case, Agent Simmons left a copy of the search warrant and an inventory of the items taken inside the residence after executing the search warrant and before leaving the premises. This was consistent with Rule 41(f)(3)(B). The court finds Johnny Ray did not suffer a constitutional violation by receiving a copy of the search warrant as directed by Rule 41(f)(3)(A). The court therefore overrules Johnny's Ray objection as to this conclusion of law.

### 4. Report and Recommendation to Deny Severance

Johnny Ray's objection to Chief Magistrate Judge Jarvey's recommendation that the Motion to Sever be denied is now moot, as codefendant Jodie Elaine did not proceed to trial.

### V. CONCLUSION

Therefore, on June 14, 2005, the court:

(1) Denied Defendant Johnny Ray McAtee's Motion to Sever (docket no. 32, 36) and Motion to Suppress Evidence (docket no. 36), and Defendant Jodie Elaine McAtee's Motion to Suppress Evidence (docket no. 38).

(2) Adopted Chief Magistrate Judge Jarvey's Report and Recommendation of June 2, 2005 (docket no. 66).

(3) Overruled Defendant Johnny Ray McAtee's Objections to the Report and Recommendation of Magistrate re Suppression (docket no. 88) and Defendant Jodie Elaine McAtee's Objections to Report and Recommendation (docket no. 89).

DATED this 23rd day of June, 2005.

LINDA R. READE
JUDGE, U. S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA